[Cite as *State v. Hill*, 2016-Ohio-353.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00077 |
| VINCENT THEODORE HILL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2014CR2026(A)

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 1, 2016

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           KRISTINE BEARD
Stark County Prosecutor                   4450 Belden Village Street N.W.
BY RONALD MARK CALDWELL                   Suite 703
110 Central Plaza South, Ste. 510         Canton, OH  44718
Canton, OH 44702-1413

*Gwin, J.*

{¶1} Appellant Vincent Hill ("Hill") appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas on one count of rape in violation of R.C. 2907.02(A)(2) and one count of sexual battery in violation of R.C. 2907.03(A)(5).

*Facts and Procedural History*

{¶2} On February 12, 2014, E.C., the 20-year-old daughter of Tracella Lou Hill (hereinafter "Tracella"), reported her tires being slashed to the Canton Police Department. After making this report, she then told the police that she had something else to report — that her stepfather, Hill had been raping her since the age of sixteen. As a result, a Canton police officer was dispatched to E.C.'s residence in order to interview the young woman and take a written statement. In this statement, E.C. told the police that Hill had been raping her during a two-year period, during the time she was 16-18 years old, and that her mother had once walked in on them during one of these rapes, and had merely told her daughter to leave the room without reporting the abuse to authorities.

{¶3} At trial E.C. testified Hill would come into her bedroom in their cramped apartment, put his hand over her mouth, and order her to be quiet,

> A. He would creep into my room at night. I was asleep. He would be very intoxicated; the smell of whiskey is strong, strong on his breath. He, he would move his hand up my shirt. When I woke up to realize what he was doing, I asked him, What are you doing. [sic.]
>
> * * *
>
> I became very scared and asked him what he was doing. He covered my mouth and he told me if I said a word that he would hurt me.

Q. Okay. Did you believe that he would hurt you?

A. Yes, I did

1T.at 23-24. E.C. further testified that she believed her stepfather's threats because she had witnessed him being verbally and physically abusive towards her mother on multiple occasions, and she thus "truly believed that he would take [her] life if [she] said anything." E.C. also noted that there were multiple firearms in the cramped residence. 1T.at 26-27.

{¶4} The residence was a one-bedroom apartment that housed six people. Hill and Tracella shared the sole bedroom, while E.C. and her sister slept in the living room-dining room area, which was separated by stacked dressers and a curtain. Hill would come into E.C.'s "bedroom" by walking directly behind the foot of her little sister's bed and opening the curtain that partitioned their "rooms." He would then lay down on E.C.'s queen-size bed and begin threatening and raping her. E.C. testified that she would try to fight her stepfather off by pushing him, scratching him, and pulling his hair.

At trial, E.C. testified that the sexual conduct was vaginal intercourse,

Q. Okay. [E.C.], when you say rape, specifically what kind of sexual activity are you talking -bout?

A. He would cover my mouth and told me if I screamed that it would be the end of me and he threatened my whole family if I said anything.

Q. Okay.

A. He forcefully took advantage of me that - - Q. Okay.

A. - - all those times.

Q. Are you talking about vaginal intercourse?

A. Yes.

Q. Okay. Erin, were you ever concerned that you would get pregnant?

A. No.

Q. And why is that?

A. To my knowledge he would always pull out. I would feel it on my sheets.

1T. at 30-31.

{¶5} During cross-examination, Hill asked about a rape that occurred in November of 2013, inquiring whether she had a shirt on then and whether "there was vaginal intercourse on that time." E.C. replied that there had been. 1T.at 59.

{¶6} All of these rapes over the years took place in E.C.'s "bedroom," but one. On one occasion, Hill came and got his stepdaughter, leading her to her parents' bedroom and bed. As Hill started to undress E.C. and start to rape her, Tracella walked in on them with a flashlight. Tracella asked what was going on, and Hill froze. Being so heavily intoxicated, however, he just rolled off E.C. Tracella then told her daughter to leave, so E.C. went to the bathroom and got into the bathtub, where she sat and cried until her mother came and got her.

{¶7} Tracella, who had already been convicted of child endangering by the time of trial, testified that she had had suspicions about Hill and E.C., but did not witness anything personally.[1] Tracella did admit that she had walked in on Hill and E.C. once when she had went to her bedroom with a flashlight, but only saw the two under the covers. Tracella then retreated and left the room, only to see her daughter shortly after

---

[1] *See, State v. Hill,* 5th Dist. Stark No. 2015CA00074.

run from the room in tears. According to Tracella, she attempted to find out what was wrong, but both her daughter and her husband would not talk to her. Finally, Tracella testified that she had been under a lot of pressure to testify, and that this pressure was from associates of Hill. 1T.at 79-84; 106.

{¶8} After turning 19 years old, E.C. made a determined effort to leave the apartment. She had her suitcase packed and was ready to head out the door when Hill confronted her,

> I had my bags packed beside me ready to leave. I told my mother and Vince I couldn't be there no more. I was working. I was of legal age. I had a safe place to go. I was ready to go. Vince became extremely angry and went to the bedroom and retrieved a 9-millimeter handgun that was shot at my feet and said if I walked out that door that both me and my fiancée would both be dead.

1T.at 70.

{¶9} Tracella was present in the kitchen during this incident and witnessed this shooting, but did not call the police on her husband 1T.at 70.

{¶10} After the disclosure to police, C.C., E.C.'s stepsister and Hill's biological daughter, talked with Tracella what was going on with E.C. During this conversation, Tracella admitted that she had walked in while Hill was in bed with E.C. 1T. at 112-113.

{¶11} With this information, Canton Detective Jerry Fuelling investigated E.C.'s allegations. As part of this investigation, he conducted a recorded interview of E.C. In addition, he also had E.C. make a phone call to her mother that was recorded. No physical evidence was seized for testing purposes. 1T. at 116.

**{¶12}** Hill testified in his defense at trial. He denied having any sex with E.C. 1T.at 132, 135. He surmised that the allegations arose because he disagreed with her choice of boyfriend. 1T.at 132- 133; 137. In addition, Hill testified that E.C. would often crawl into bed with him if she were sick or scared. 1T.at 134.

**{¶13}** The jury found Hill guilty on all counts of the indictment. The trial court sentenced Hill to serve 10 years on the rape conviction and 12 months on the sexual battery conviction. The trial court merged the sentences giving Hill an aggregate term of 10 years.

*Assignments of Error*

**{¶14}** Hill raises five assignments of error,

**{¶15}** "I. APPELLANT'S CONVICTIONS FOR RAPE AND SEXUAL BATTERY ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE.

**{¶16}** "II. THE PROSECUTOR COMMITTED PLAIN ERROR IN THE CLOSING ARGUMENT BY ARGUING FACTS NOT IN EVIDENCE.

**{¶17}** "III. DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO STATE'S CLOSING ARGUMENT WHICH STATED FACTS NOT IN EVIDENCE.

**{¶18}** "IV. THE JURY'S VERDICT FOR RAPE AND SEXUALLY BATTERY AND THE TRIAL COURT'S FINDING THAT APPELLANT IS A TIER III SEX OFFENDER ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶19}** "V. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MAXIMUM SENTENCE FOR RAPE."

I. & IV.

**{¶20}** Hill's first and fourth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶21}** In his first assignment of error, Hill contends his convictions are against the manifest weight of the evidence produced by the state at trial. In his fourth assignment of error, Hill challenges the sufficiency of the evidence.

**{¶22}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶23}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in

inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶24} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶25} To find Hill guilty of rape the trier of fact would have to find beyond a reasonable doubt that Hill engaged in sexual conduct with E.C. when Hill purposely compelled E.C. to submit by force or threat of force. R.C. 2907.02(A)(2). To find Hill guilty of sexual battery, the trier of fact would have to find beyond a reasonable doubt that Hill engaged in sexual conduct with E.C., not his spouse, when Hill is E.C.'s natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of E.C. R.C. 2907.03 (A)(5).

{¶26} Sexual conduct includes, "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration however slight is sufficient to complete vaginal or anal intercourse." R.C. 2907.01.

{¶27} In order to sustain a conviction on rape charges predicated on either vaginal or anal intercourse, the state is required to establish beyond a reasonable doubt that the accused and the victim actually engaged in vaginal or anal intercourse. Under R.C. 2907.01(A) the state must establish vaginal or anal intercourse by establishing the slightest degree of penetration. *State v. Ferguson*, 5 Ohio St. 3d 160, 167, 450 N.E. 2d 265, 271(1983). The Supreme Court found in *Ferguson* that a victim's testimony stating that she only had "intercourse" was insufficient to establish that vaginal or anal intercourse occurred. 5 Ohio St.3d at 168, 450 N.E.2d 265. The court explicitly stated that, "where

the victim testifies that she and the accused only had 'intercourse' and does not testify as to any degree of vaginal or anal penetration, convictions on charges relating to either vaginal or anal intercourse are based on insufficient evidence." Id.   As the Ohio Supreme Court stated, "we must reinforce the need to have the events described with sufficient clarity to establish the offender's guilt beyond a reasonable doubt." *State v. Ferguson*, 5 Ohio St.3d at 168, 450 N.E.2d at 271-272, fn. 6.

{¶28}   In a sexual context, we conclude that the terms "vaginal intercourse," as it is commonly used, has a clear meaning, to-wit, "the act of having sex: vaginal/anal intercourse."[2]   The victim was a twenty-year old female at the time of trial who clearly understands the meaning of "vaginal intercourse" as involving penetration. *See State v. Bell*, 12th Dist. No. CA99–07–122, 2001 WL 432737, * 8 (Apr. 30, 2001) ("vaginal intercourse" occurs "when the penis is inserted into the vagina"). Further, in the case at bar, E.C. testified that Hill "would always pull out."

{¶29}   Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hill committed the crimes of rape and sexual battery. We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and sexual battery and, accordingly, there was sufficient evidence to support Hill's convictions.

{¶30}   As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her

---

[2] Cambridge Dictionaries Online, http//dictionary.cambridge.org/dictionary/english (accessed Jan. 19, 2016).

judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

{¶31} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No.

99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999).

**{¶32}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶33}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶34}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541,

*quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Hill of the charges.

{¶35} Based upon the foregoing and the entire record in this matter, we find Hill's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Hill. This court will not disturb the trier of facts finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Hill's guilt.

{¶36} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes of rape and sexual battery beyond a reasonable doubt.

{¶37} Hill's first and fourth assignments of error are overruled.

II.

{¶38} Hill's second assignment of error alleges prosecutorial misconduct in the closing arguments portion of the trial. Hill specifically argues that the prosecutor commented on matters for which there was no evidence, i.e., vaginal intercourse.

{¶39} Hill concedes that he did not object to the comments that he now assigns as error. In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim. R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the

outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶40}** "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010)(internal quotation marks and citations omitted).

**{¶41}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

**{¶42}** A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a

prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). *Accord, State v. Pickens*, 141 Ohio St.3d at ¶110, 2014-Ohio-5445, 25 N.E.3d 1023.

{¶43} The crux of Hill's prosecutorial-misconduct argument relates to the prosecutor's comment that Hill had engaged in vaginal intercourse with his daughter by putting his penis inside her vagina. Hill contends that because no evidence of penetration was presented the comments are a material misrepresentation of an essential element that must be proven beyond a reasonable doubt and therefore rise to the level of plain error.

{¶44} As we discussed in our disposition of Hill's first and fourth assignments of error supra, the victim's testimony that Hill engaged in "vaginal intercourse" and would "always pull out" were sufficient in this case to prove "penetration." The prosecutor's comments, therefore, were a fair statement of the evidence presented at trial, and did not constitute misconduct that denied Hill a fair trial. Hill has therefore failed to meet his burden of demonstrating prosecutorial misconduct.

{¶45} Hill's second assignment of error is overruled.

III.

{¶46} In his third assignment of error, Hill alleges ineffective assistance of counsel. He specifically argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument for commenting on matters for which there was no evidence, i.e., the lack of any evidence as to vaginal intercourse.

{¶47} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶48} Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. __, 2015 WL 5774453(Oct. 5, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

{¶49} As we have previously noted, there was evidence presented that the nature of Hill's conduct with his stepdaughter was vaginal intercourse. Therefore, trial counsel was not ineffective for failing to object to the prosecutor's comments regarding vaginal intercourse, and the assignment of error is without merit.

{¶50} Hill's third assignment of error is overruled.

V.

{¶51} In his fifth assignment of error, Hill challenges the trial court's imposition of the maximum sentence for his rape conviction. He argues that the record did not support the imposition of the maximum sentence for his rape conviction in this case, and that the trial court did not consider the purposes and principles of sentencing or any mitigating factors in imposing the maximum sentence.

{¶52} The trial court sentenced Hill to serve 10 years on the rape conviction and 12 months on the sexual battery conviction.  The trial court merged the sentences giving Hill an aggregate term of 10 years.

{¶53} The two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. *State v. Tammerine*, 6th Dist. Lucas No. L–13–1081, 2014–Ohio–425, ¶10; *State v. Wellington*, 7th Dist. Mahoning No. 14 MA 115, 2015-Ohio-1359, ¶10; *State v. Brewer*, 4th Dist. Meigs No. 14CA1, 2014–Ohio–1903, ¶33;  *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014–Ohio–5269, ¶ 55;  State v. *Rodeffer*, 2nd Dist. Montgomery Nos. 25574, 25575, 25576, 2013–Ohio–5759, 5 N.E.3d 1069, ¶29; *State v. Murphy*, 10th Franklin No. 12AP–952, 2013–Ohio–5599, ¶12; *State v. Crawford*, 12th Dist. Clermont No. CA2012–12–088, 2013–Ohio–3315, ¶6; *State v. White*, 1st Dist. Hamilton No. C–130114, 2013–Ohio–4225, 997 N.E.2d 629, ¶10; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31; *See also State v. Marcum,* 141 Ohio St.3d 1453, 2015–Ohio–239, 23 N.E.3d 1453 (Ohio Supreme Court has accepted the certified conflict question of what is the felony sentencing standard of review).

**{¶54}** We now review felony sentences using the standard of review set forth in R.C. 2953.08. *Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

**{¶55}** For several years after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470(2006), we consistently held that judicial fact-finding was not required before a trial court could impose non-minimum, maximum or consecutive prison terms. *See, e.g., State v. Williams*, 5th Dist. Muskingum No. CT2009–0006, 2009–Ohio–5296, ¶19. Subsequently, 2011 Am.Sub. H.B. No. 86, which became effective on September 30, 2011, the General Assembly expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-*Foster*. However, the provisions requiring findings for "maximum" and "more than minimum" sentences that the legislature did not intend to revive were explicitly repealed under H.B. 86. *See State v. George*, 5th Dist. Fairfield No. 14 CA 45, 2015–Ohio–3065, ¶ 11, *citing State v. White*, 1st Dist. Hamilton No. C–130114, 2013–Ohio–4225, ¶ 8. In other words, "[t]he trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 992 N.E.2d 491, 2013–Ohio–2021, ¶ 45 (2nd Dist.).

{¶56}  R.C. 2929.12 lists general factors that must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

{¶57}  Under R.C. 2929.11(A), the "overriding purposes" of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. R.C. 2929.11(A).

{¶58}  Among the various factors that the trial court must consider and balance under R.C. 2929.12 are: (1) serious physical, psychological, or economic harm to the victim as a result of the offense; (2) whether the offender has a history of criminal convictions; (3) whether the offender has not responded favorably to sanctions previously imposed by criminal convictions; and (4) whether the offender shows genuine remorse for the offense. R.C. 2929.12.

{¶59}  R.C. 2929.11 and 2929.12 require consideration of the purposes of felony sentencing, as well as the factors of seriousness and recidivism. *See State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006–Ohio–855, ¶ 38.

**{¶60}** "[W]here the trial court does not put on the record its consideration of [Sections] 2929.11 and 2929.12 [of the Ohio Revised Code], it is presumed that the trial court gave proper consideration to those statutes." (Alterations sic.) *State v. Steidl,* 9th Dist. Medina No. 10CA0025–M, 2011–Ohio–2320, ¶ 13, *quoting State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912 at ¶ 18, fn. 4. "Unless the record shows that the court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez,* 9th Dist. Media No. 13CA0054–M, 2014–Ohio–3651, ¶ 8, *quoting State v. Boysel,* 2d Dist. Clark No.2013–CA–78, 2014–Ohio–1272, ¶ 13.

**{¶61}** In his sentencing entry filed April 13, 2015, the trial judge specifically notes that he considered the purposes of felony sentencing, as well as the factors of seriousness and recidivism. In his assignment of error, Hill makes no other claim and points to no mitigating evidence in the record to support his contention that the trial court abused its discretion in sentencing him. An abuse of discretion means more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Thus, in the felony-sentencing context, "[a]n abuse of discretion can be found if the sentencing court unreasonably or arbitrarily weighs the factors in R.C. 2929.11 and R .C. 2929.12." *State v. Heverly*, 7th Dist. No. 09 CO 4, 2010–Ohio–1005, ¶ 34.

**{¶62}** In the case at bar, the jury found Hill repeatedly raped his stepdaughter over a two-year period. We find the sentencing court did not abuse its discretion in sentencing Hill to the maximum sentence.

{¶63}  Hill's fifth assignment of error is overruled.

{¶64}  For the foregoing reasons, the judgment of the Richland County Court of Common Pleas, Richland County, Ohio is affirmed.

By Gwin, J.,

Farmer, P.J., and

Wise, J., concur