[Cite as *State v. Payton*, 2018-Ohio-3864.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SEAN S. PAYTON | : | Case Nos. CT2017-0095 and |
| | : | CT2017-0096 |
| | : | |
| Defendant- Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case Nos. CR2017-0297 and
CR2018-0386




JUDGMENT:    Affirmed




DATE OF JUDGMENT:    September 21, 2018




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

D. MICHAEL HADDOX                    AMY L. OTTO
Prosecuting Attorney                    1391W. Fifth Avenue
By: GERALD V. ANDERSON, II            Suite 147
Assistant Prosecuting Attorney            Columbus, OH 43212
27 North Fifth Street
P. O. Box 189
Zanesvillle, OH  43702-189

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Sean S. Payton appeals two judgments of conviction and sentence entered by the Muskingum County Court of Common Pleas on November 16, 2016. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   At the plea hearing in this matter, the parties stipulated to the following facts:

{¶ 3}   On June 4, 2017, Payton's neighbor observed Payton, his girlfriend, A, and his girlfriend's 10 year-old daughter, M, outside arguing. The neighbor heard Payton tell M she could go to jail for the way she was acting, and heard M retort that Payton could go to jail for what he had been doing to her. In response, Payton grabbed M by the arm and ordered her to "shut the fuck up." A was on her way to an appointment, and having heard this exchange, asked the neighbor to watch M for the evening.

{¶ 4}   It appeared to the neighbor that Payton did not want M left alone with anyone. He followed her to the neighbor's house, and before leaving, pulled M close and said "please don't tell one me." The neighbor overheard this request.

{¶ 5}   During the course of the evening, the neighbor asked M about what she had overheard. M revealed in detail, 3 years of ongoing sexual abuse at the hands of Payton, including oral, vaginal and anal intercourse. She begged her neighbor to please make her mother believe her. When A arrived to retrieve M, the neighbor told A what M had revealed. A took M home, but instead of calling the sheriff or taking her daughter for medical attention, A kept M in the home with Payton while she talked to him about the allegations.

{¶ 6}   Hours later, when the neighbor did not see A leave the house, nor law enforcement arrive at the home, she called the sheriff herself. When deputies arrived, A indicated she had confronted Payton with the allegations and he had denied the same. While that was going on, Payton swallowed numerous prescription medication pills and attempted to kill himself. Deputies thwarted in his attempt and placed him under arrest.

{¶ 7}   M was taken to a Children's Advocacy Center and interviewed. She remained consistent in her allegations.

{¶ 8}   While investigation was pending into that matter, A and M moved in with A's mother, C. On August 20, 2017, C was awakened by M who told her Payton was in the house, and she had heard her mother yelling at Payton when Payton asked where M was. M then hid in a closet while C called the sheriff's department. C reported that her daughter was locked in a bedroom, possibly against her will, with Payton.

{¶ 9}   Before deputies arrived, Payton entered A's room with a knife, grabbed her by the arm, questioned her about M and demanded her phone because he wanted to see who she was talking to. He then held her down and raped her at knifepoint.

{¶ 10} When deputies arrived, they had to kick in the bedroom door. As they entered the room A warned Payton had a knife and Payton began alternately cutting his wrists and waving the knife at the deputies. He yelled at them to shoot him because he was ready to die. The deputies used a Taser to subdue Payton and he was removed from the residence.

{¶ 11} As a result of these events, on September 7, 2017, Payton was charged with one count of aggravated burglary in violation of R.C. 2911.11(A)(1) and two counts of rape in violation of R.C. 2907.02(A)(2). (Our Case No. 2017-95 involving A). On

October 25, 2017, Payton was charged, with one count of rape of a victim less than 13 years of age in violation of R.C.2907.02(A)(1)(b). (Our Case No. 2017-0096 involving M).

{¶ 12} On October 27, 2017, Payton appeared for an arraignment hearing and a plea hearing. Per negotiations with the state, in the case involving A, the state dismissed the charge of aggravated burglary and one count of rape. Payton pled guilty to the remaining count of rape. In the case involving M, appellant was arraigned, and then pled guilty as charged to one count of rape of a victim under 13 years of age. The trial court ordered a pre-sentence investigation and set the matter over for sentencing.

{¶ 13} Payton's sentencing hearing was held on November 15, 2017. For the case involving M, Payton was sentenced to life with the possibility of parole after 10 years. For the case involving A, Payton was sentenced to a consecutive mandatory prison term of ten years. He was further classified as a Tier III sex offender.

{¶ 14} Payton thereafter filed an appeal, and the matter is now before this court for consideration. Payton raises two assignments of error as follow:

I

{¶ 15} "THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES THAT ARE CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD."

{¶ 16} "THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL."

I – Case Nos. 2017-0095 and 2017-0096

{¶ 17} In his first assignment of error, Payton argues the trial court erred in imposing consecutive sentences. Payton does not argue that the trial court failed to make

the appropriate findings to impose consecutive sentences pursuant to R.C. 2929.14(C)(4). Rather, Payton argues his consecutive sentences must be vacated because they are not supported by the record, and because in imposing consecutive sentences, the trial court failed to consider the purposes of felony sentencing, Payton's risk of recidivism, and the seriousness of the crime as required by R.C. 2929.11 and R.C 2929.12. We disagree.

{¶ 18} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. See, also, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28.

{¶ 19} Thus, under *Marcum* we may vacate or modify a felony sentence on appeal only if we determine by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law.

{¶ 20} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of

facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477 120 N.E.2d 118.

{¶ 21} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus.

{¶ 22} In *State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, the Eighth District Court of Appeals explained at ¶ 19-22:

> If the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we "clearly and convincingly" find "[t]hat the record does not support the court's findings[.]"
>
> It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.
>
> It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing

evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

In reaching this conclusion, we note that the term "record" as used in R.C. 2953.08(G)(2) is very broad. It encompasses all of the proceedings before the court, not just the sentencing. And while the court has the obligation to make separate and distinct findings under R.C. 2929.14(C)(4) before imposing sentence, support for those findings may appear anywhere in the "record" and not just at the time the court imposes consecutive sentences.

{¶ 23} We recently explained in *State v. Wilson*, 5th Dist. No. 17CA31, 2018-Ohio-396 at ¶ 55-60:

R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be

"commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the court discussed the effect of the *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and ¶ 11, citing *Foster* at ¶ 100, See also, *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823, 2006 WL 3185175.

"Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, see also *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1; *State v. Firouzmandi* supra at ¶ 29.

Thus, post-*Foster*, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061, 2006 WL 2257068; *State v. Delong*, 4th Dist. No. 05CA815, 2006-Ohio-2753, 2006 WL 1495258 at ¶ 7–8. Therefore, post-*Foster*, trial courts are still required to consider the general guidance factors in their sentencing decisions.

There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431, 655 N.E.2d 820 (4th Dist. 1995); *State v. Gant*, 7th Dist. No. 04 MA 252, 2006-Ohio-1469, 2006 WL 771790, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992); *State v. Hughes*, 6th Dist. No. WD-05-024, 2005-Ohio-

6405, 2005 WL 3254572, ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods*, 5th Dist. No. 05 CA 46, 2006-Ohio-1342, 2006 WL 726271, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).

{¶ 24} The trial court sentenced Payton as follows:

* * *

The Court: Thank you. Well, the Court has received the presentence investigation and had an opportunity to review the same, The court would note for the record you entered pleas of guilty to two counts, both counts being rape, one carrying the only sentence of ten years to life and one being a regular felony of the first degree which carries a 3 to 11 year sentence.

Upon review of the presentence investigation, the Court would note for the record that you have no felony record but you have nine misdemeanors running from such things as criminal mischief, obstruction of justice, domestic violence, delinquency of a minor, criminal damaging, resisting arrest, trespassing and thefts.

* * *

The Court would note there are two separate victims in this case, one a child and one the child's mother. In the second incident involving the mother, a weapon was involved. There was also a struggle with police officers. You needed to be tased. You were trying to commit suicide, or at least cutting yourself, and you've been on suicide watch since you've been at the jail.

The court has determined that, in regards to Case No. 0386, I must impose the ten years to life sentence. Those ten years are mandatory time. And in regards to Case No. 0297, to make it somewhat equal, the court will impose a ten-year mandatory sentence which is the same as the ten-year sentence you receive for the child.

The Court will order, though, that that sentence be served consecutively. The Court finds that consecutive sentences are necessary to protect the public and to punish you. Consecutive sentences are not disproportionate to the seriousness of the conduct and the danger you pose to the public.

The Court also finds that at least two or more of the multiple offenses were committed as a part of one or more courses of conduct and because two or more of the multiple offenses committed were so great and unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of your conduct.

* * *

{¶ 25} Transcript of sentencing, 8-11.

{¶ 26} Payton argues that while the foregoing complied with the requirements of R.C 2929.14(C)(4), the trial court was still required to address on the record, the purposes of felony sentencing and the seriousness and recidivism factors of R.C. 2929.11 and 2929.12. He further faults the trial court for failing to engage in some type of analysis of its consideration of these code sections in its sentencing judgment entry.

{¶ 27} But as discussed above, the trial court was not required to do so. Rather the trial court need only indicate it considered R.C. 2929.11 and R.C. 2929.12. The forgoing portion of the sentencing hearing as well as the sentencing judgment entry reflect the trial court's consideration of both sections.

{¶ 28} Finally, Payton argues that although the trial court made the appropriate findings per R.C. 2929.14(C)(4), consecutive sentences are not supported by the record. He points to his minimal criminal record. While Payton's lack of a felony record may indicate he poses a minimal threat to the public, other parts of the record support the trial court's finding that consecutive sentences are not disproportionate to the danger Payton poses. Specifically, Payton engaged in a course of conduct involving two victims. Payton first repeatedly sexually assaulted a child under the age of 13 for a period of three years. While he was being investigated on that matter, he broke into the home where A and M were staying, looking for M. He then raped A at knife point. Payton did not engage in a one-time crime. Rather, his crimes were ongoing and further, appear to have been escalating. This indicates Payton's capacity to continue down the path of a criminal lifestyle and highlights the danger he poses to the public.

{¶ 29} Payton's sentences are not contrary to law and are supported by the record. The first assignment of error is overruled.

## II – Case No. 2017-0096

{¶ 30} In his second assignment of error, Payton argues his trial counsel rendered ineffective assistance because he did not fully and independently investigate the facts of the case before the plea hearing. This failing, Payton argues, rendered his pleas less than knowing, intelligent and voluntary. We disagree.

{¶ 31} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 32} A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Where a defendant has entered a guilty plea, he can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability

that but for counsel's deficient performance, he would not have pled guilty to the offenses and would have insisted on going to trial. *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶ 33} Payton's arguments under this assignment of error are purely speculative. He assumes trial counsel conducted no investigation simply based on the timeline of his indictment on the second case to be indicted, the matter involving M, and his pleas of guilty the following day to the charge in that matter and the charges involving A. Nothing in the record, however, supports Payton's argument. In fact, at the time of Payton's pleas, the state indicated on the record that it had been in negotiations with counsel for Payton, and that they had worked out an agreement as to both cases. Transcript of Plea 3-5.

{¶ 34} Further, Payton fails to demonstrate that but for the alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. To the contrary, without any comment from Payton, during sentencing Payton's attorney represented to the trial court that Payton pled guilty to the crimes, was not seeking to withdraw his guilty pleas, and was accepting responsibility for his actions. Transcript of sentencing at 6. When addressed by the court, Payton acknowledged his understanding of the agreement and his desire to plead guilty to two counts of rape. *Id*.

{¶ 35} Payton has not demonstrated his counsel rendered ineffective assistance, nor prejudice. The second assignment of error is overruled.

{¶ 36} The judgment of conviction and sentence of the Muskingum County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Hoffman, P.J. and

Delaney, J. concur.


EEW/rw