[Cite as *State v. McAllister*, 2020-Ohio-4492.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2019 CA 00118 |
| | : | |
| HAZEL MCALLISTER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas, 18 CR 120



JUDGMENT:                       AFFIRMED




DATE OF JUDGMENT ENTRY:         September 17, 2020




APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

WILLIAM C. HAYES                        WILLIAM T. CRAMER
LICKING COUNTY PROSECUTOR               470 Olde Worthington Road, Suite 200
                                        Westerville, OH 43082
PAULA M. SAWYERS
20 S. 2nd St., 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Defendant-Appellant Hazel McAllister appeals the October 31, 2019 sentencing judgment entry of the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

**Underlying Events**

{¶2} On August 17, 2016, troopers with the Ohio State Highway Patrol were investigating an automobile accident in Licking County, Ohio. During their investigation, they were approached by a person who observed a woman injecting drugs in the restroom of a fast food restaurant. The troopers made contact with the woman as she was getting into her vehicle. The woman was later identified as Defendant-Appellant Hazel McAllister.

{¶3} While speaking with McAllister, the troopers confirmed she was the sole occupant of the vehicle, she did not have a valid driver's license, and she was the subject of an active felony warrant.

{¶4} McAllister was taken into custody and the registered owner of the vehicle was contacted. The owner advised that McAllister was her cousin and she had loaned the vehicle to her that morning. The owner consented to a search of the vehicle.

{¶5} During the search of the vehicle, law enforcement personnel located multiple items: (1) an unsecured and loaded .45 caliber Kimber Warrior handgun on the front passenger floorboard; (2) two baggies containing marijuana; (3) a piece of tin foil containing heroin; and (3) two vacuum sealed bags containing 883.8 grams of methamphetamine.

**Indictment**

{¶6}   On May 25, 2017, in Case No. 2017 CR 00497, the Licking County Grand Jury indicted Defendant-Appellant Hazel McAllister for aggravated possession of drugs, having a weapon under disability, carrying a concealed weapon, and possession of heroin. At that time of the indictment, McAllister was incarcerated in Summit County. Case No. 2017 CR 00497 was dismissed without prejudice on December 15, 2017.

{¶7}   On February 21, 2018, the Licking County Grand Jury indicted Defendant-Appellant Hazel McAllister on four counts in Case No. 2018 CR 00120: (1) aggravated drug possession (methamphetamine) in an amount that equals or exceeds one hundred times bulk, a first-degree felony in violation of R.C. 2925.11(A)(C)(1)(e); (2) having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2); (3) carrying concealed weapons, a fourth-degree felony in violation of R.C. 2923.12(A)(2); and (4) possession of drugs (heroin), a fifth-degree felony in violation of R.C. 2925.11(A)(C)(6)(a). The indictment also included forfeiture specifications for the firearm under R.C. 2941.1417(A) and 2981.02(A)(3).

**Criminal Proceedings**

{¶8}   McAllister entered a plea of not guilty to the charges and the matter was scheduled for a jury trial. McAllister was placed on Supervised Pre-Trial Release Supervision.

{¶9}   After her incarceration in Summit County, Allister was incarcerated in the Dayton Correctional Facility and released on January 13, 2019. After her release, she was instructed to report to Licking County Adult Court Services. On January 23, 2019, the

trial court issued a capias for McAllister's arrest for her failure to report to ACSD after her release from the Dayton Correctional Facility.

{¶10} The matter was scheduled for jury trial on March 12, 2019. McAllister failed to appear. On March 12, 2019, the trial court revoked McAllister's bond and ordered a capias for McAllister's arrest. McAllister was arrested and appeared in court on March 18, 2019. The trial court set McAllister's bond at $50,000 and ordered electronic monitoring. The jury trial was rescheduled to April 24, 2019.

{¶11} McAllister failed to appear for the April 24, 2019 jury trial. The trial court revoked McAllister's bond and issued a capias for her arrest.

{¶12} McAllister turned herself in and appeared for a bond forfeiture hearing on May 8, 2019. The trial court set McAllister's bond at $150,000. The jury trial was continued to June 18, 2019. Upon the State's motion, the trial was continued to July 24, 2019.

{¶13} On July 19, 2019, McAllister filed a motion to continue the jury trial and set the matter for a change of plea and sentencing hearing. The change of plea and sentencing hearing was scheduled for September 9, 2019.

{¶14} On August 20, 2019, McAllister's probation officer filed an application for an order for a capias for her arrest. He stated she could not be located and she had failed to report to ACSD since July 29, 2019. The trial court ordered a capias issued for her arrest.

{¶15} On September 9, 2019, the matter came on for a change of plea and sentencing hearing. McAllister failed to appear. The trial court revoked McAllister's bond and ordered a capias issued for her arrest.

{¶16} A bond forfeiture hearing was held on September 19, 2019. McAllister appeared at the hearing. The trial court set McAllister's bond at $1,000,000.

{¶17} The change of plea and sentencing hearing was scheduled for October 30, 2019. At the hearing, counsel for McAllister stated that he met with her at the jail and in court before the hearing. He stated he understood that McAllister did not wish to enter into a plea agreement with the State or enter pleas of guilty. (October 30, 2019 Hrg., T. 3). The State responded the plea agreement would drop the major drug offender accusation related to the aggravated drug possession charge, which would remove the mandatory maximum prison term of eleven years. The first count would remain a first-degree felony and the State agreed to defer to the trial court for sentencing. (T. 4). The State contended the Bill of Particulars and Amended Bill of Particulars contained the statutory major drug offender language. (T. 5). McAllister also faced mandatory prison time on her other charges. The matter was set for jury trial. (October 30, 2019, Judgment Entry).

{¶18} On October 31, 2019, the State filed a motion to amend the indictment as to Count One to indicate that it was a violation of R.C. 2925.11(A)(C)(1)(d), a felony of the first-degree and the language of the statute to indicate that "the amount of the drugs equals or exceeds fifty times bulk but is less than one hundred times bulk." The parties came to the trial court on October 31, 2019 for a change of plea and sentencing hearing. McAllister stated at the hearing it was her intention to withdraw her not guilty pleas. The trial court conducted the plea colloquy. McAllister pleaded guilty to an amended Count One, aggravated possession of drugs, a first-degree felony in violation of R.C. 2925.11(A)(C)(1)(d), which carried a maximum prison term of three to eleven years; Count Two, having weapons under disability, a third-degree felony in violation of R.C. 2923.12(A)(1) and (2), with a maximum prison term of 36 months; Count Three, carrying

a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A)(2)(f)(1), with a maximum prison term of 18 months; and Count Four, possession of heroin, a fifth-degree felony in violation of R.C. 2925.11(A)(C)(6)(a), with a maximum prison term of one year. (T. 10).

{¶19} The trial court accepted McAllister's guilty pleas to the four charges. The trial court noted that a presentence investigation report had been prepared and it had reviewed the report. (T. 17). In regards to sentencing, counsel for McAllister stated that she had provided information to local law enforcement regarding drug activity in Franklin County that had been passed on to the DEA. (T. 18). Counsel also argued the incident occurred in 2016. Based on her arrest in 2016, her probation in Summit County was revoked and she served prison time. After she was released from prison, McAllister was involved in a car accident that caused her serious injury and fatal injuries to her relative. (T. 19). McAllister stated she failed to appear in court after the $150,000 bond was imposed because of the car accident. (T. 24).

{¶20} McAllister informed the trial court she had two young children. (T. 21). While she was on pretrial bond, she maintained employment and gave clean drug screens. When she violated bond, she turned herself in to the bondsman. (T. 21).

{¶21} The trial court noted that McAllister had been granted judicial release twice and it had been revoked both times. (T. 22). She applied for judicial release a third time and it was denied. (T. 22). Before imposing sentence, the trial court stated:

THE COURT: Okay. Ms. McAllister, this is two pounds of Methamphetamine.

DEFENDANT: I know.

THE COURT: I'll never see another seizure that large, never seen one come close to that, 883 grams. I forget what it takes to be mandatory prison, but it's like 15 or something like that. And it was in 2016. But you were on parole at the time it looks like or on judicial release, something, on supervision at least, and since you got out of prison and posted your bond here, you've just – you've been a bondsmen's nightmare. In any event –

DEFENDANT: I turned myself in with my bondsman.

THE COURT: Which time?

DEFENDANT: On the 18th, August 18th.

THE COURT: Okay. Well, that's after their second or third warrant was issued for your arrest. What was the bond posted then when you showed up again?

DEFENDANT: Fifty thousand, but I was released from prison.

THE COURT: Is it a million now? Is that what your bond is?

DEFENDANT: Yes.

THE COURT: Okay. Since you failed to appear after the $150,000 bond.

DEFENDANT: Yes, sir. That was the time of the accident.

(T. 23-24)

{¶22} The trial court then sentenced McAllister:

THE COURT: Okay. Well, Ms. McAllister, on that basis here today, I'll impose a term of * * * five years in the state penitentiary on Count No. 1. I'll impose a term of three years in the state penitentiary on Count No. 2, weapons under disability. I'll impose a term of one year in the state

penitentiary on the carrying concealed weapons charge, and one year on the Heroin possession charge. I'll order they run consecutively with each other for a 10-year prison term.

* * *

THE COURT: I find that consecutive sentences are necessary to protect the public, punish the Defendant, not disproportionate to the crime she's committed, and necessitated by her criminal history * * * and that this offense occurred while she was on supervision.

(T. 24, 26-27).

{¶23} On October 31, 2019, the trial court filed its judgment entry sentencing McAllister to an aggregate prison term of ten years. In the sentencing entry, the trial court sentenced McAllister to consecutive prison terms:

The Court has decided that the offender shall serve the prison terms consecutively, pursuant to R.C. 2929.14(C)(4), because the Court finds that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the Court also finds the following: The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under s sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense. The offender's

history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶24} It is from this judgment entry that McAllister now appeals.

**ASSIGNMENT OF ERROR**

{¶25} McAllister raises one Assignment of Error:

{¶26} "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE STATUTORY FINDINGS AND IN CONTRAVENTION OF THE CLEAR AND CONVINCING EVIDENCE THAT APPELLANT WAS NOT SO DANGEROUS AS TO REQUIRE CONSECUTIVE SENTENCES."

**ANALYSIS**

{¶27} McAllister argues in her sole Assignment of Error that the trial court erred when it imposed consecutive sentences because it failed to make the requisite findings under R.C. 2929.14(C)(4) and the record did not support consecutive sentences. We disagree.

{¶28} McAllister was convicted and sentenced to five years in prison for aggravated possession of drugs, a first-degree felony; three years in prison for having weapons under disability, a third-degree felony; one year in prison for carrying concealed weapons, a fourth-degree felony; and one year in prison for possession of drugs, a fifth-degree felony. The trial court ordered the prison terms were to run consecutively for an aggregate term of ten years.

{¶29} We review sentencing under R.C. 2953.08(G)(2). "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 7. An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶ 23. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Silknitter*, 3rd Dist. Union No. 14-16-07, 2017-Ohio-327, ¶ 7, citing *Marcum, supra*. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶30} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences and provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶31} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus. The sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell*, ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Bonnell*, ¶ 34. The findings required by R.C.

2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry. *Id.* at the syllabus.

{¶32} The relationship between the clear and convincing standard and the R.C. 2929.14(C)(4) findings was explained in *State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, ¶ 19-22:

If the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we "clearly and convincingly" find "[t]hat the record does not support the court's findings[.]"

It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge. It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

In reaching this conclusion, we note that the term "record" as used in R.C. 2953.08(G)(2) is very broad. It encompasses all of the proceedings before the court, not just the sentencing. And while the court has the obligation to make separate and distinct findings under R.C. 2929.14(C)(4) before imposing sentence, support for those findings may appear anywhere in the "record" and not just at the time the court imposes consecutive sentences.

*State v. Payton*, 5th Dist. Muskingum No. CT2017-0095, 2018-Ohio-3864, 2018 WL 4600875, ¶ 22.

{¶33} McAllister acknowledges the trial court made the proper R.C. 2929.14(C)(4) findings in the October 31, 2019 sentencing entry. She argues the trial court did not make the proper findings during the sentencing hearing. At the sentencing hearing, the trial court stated consecutive sentences were necessary "to protect the public, punish the Defendant, not disproportionate to the crime she's committed, and necessitated by her criminal history * * * and that this offense occurred while she was on supervision." (T. 26-27). McAllister notes the trial court indicated that consecutive sentences were proportionate to the seriousness of her conduct but did not mention whether consecutive sentences were proportionate to the danger she posed to the public. She argues the trial court made an incomplete finding as to proportionality, the third required finding to impose consecutive sentences. She does not argue the trial court failed to make the "necessary" finding under R.C. 2929.14(C)(4) or any of the three alternative findings under R.C. 2929.14(C)(4)(a), (b), or (c).

{¶34} As stated above, the trial court is not required to recite a word-for-word recitation of the language of the statute. ""[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014-Ohio-3177, ¶ 29.

{¶35} During its sentencing of McAllister, the trial court addressed the seriousness of McAllister's conduct. The amount of methamphetamine in McAllister's possession, 833 grams or almost two pounds, appeared to shock the trial court. It stated it had never seen, and probably never will see again, a seizure of methamphetamine that large. It believed that a much lesser amount of methamphetamine required a mandatory prison term. During her arrest, a loaded weapon was also found in her possession.

{¶36} The trial court noted McAllister's habit of ignoring court orders. At the time of her arrest for possession of 883 grams of methamphetamine, heroin, and a loaded firearm, she was on either felony probation or parole. She was also the subject of an active felony warrant. She had been previously granted judicial release two times and had it revoked both times. When she applied for judicial release a third time, it was denied. During the pendency of this case, McAllister failed to appear in court at least three times for which she was arrested. She also failed to appear for pre-trial supervision, also requiring the issuance of a capias. She did not contact her attorneys or the trial court to excuse her absences. Her original bond was set at $50,000. At the time of sentencing, McAllister's bond was set at $1,000,000.

{¶37} We find the trial court made the proportionality finding as required by R.C. 2929.14(C)(4). While the trial court did not use the words "consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" before imposing consecutive sentences, it did state at the sentencing hearing that consecutive sentences were "not disproportionate to the crime she's committed." (T. 26-27). The trial court addressed the seriousness of McAllister's conduct when it noted the large amount of methamphetamine found in her possession. It considered the danger she posed to the public in her continued failure to abide by court orders ranging from appearing in court to refraining from engaging in criminal activity while on parole or probation. Based on the seriousness of her conduct and the danger of her continued failure to abide by the law, the trial court found a single sentence inadequate. Further, the trial court stated in the sentencing entry that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶38} As a result, upon review of the sentencing transcript and the judgment entry, we can discern from the record that the trial court engaged in the appropriate analysis and made the requisite proportionality finding. The trial court's deviation from the statutory language was not so egregious so as to render the sentence clearly and convincingly contrary to law.

{¶39} We overrule McAllister's sole Assignment of Error.

## CONCLUSION

{¶40} The judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J., and

Baldwin, J., concur.