[Cite as *State v. Howell*, 2015-Ohio-4049.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00004 |
| JAMES TERRY HOWELL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2014CR1635

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      September 29, 2015


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                          JACOB WILL
STARK COUNTY PROSECUTOR               116 Cleveland Avenue N.W.
BY: RONALD MARK CALDWELL              Canton, OH  44702
110 Central Plaza South, Ste. 510
Canton, OH  44702

*Gwin, P.J.*

{¶1} James Terry Howell, Jr., ["Howell"], appeals his conviction and sentence after a jury trial of one count of domestic violence a felony of the third degree.

*Facts and Procedural History*

{¶2} Around 3:00 a.m. on September 30, 2014, Ryan Rider was awakened in his home located on Nicholas Place in Canton by loud screaming outside his home. Upon hearing this screaming, Rider looked outside of his bedroom window to see who was screaming for help. He noticed a woman on a neighbor's porch doing the screaming. Rider also saw a man pulling this woman, grabbing at her and the little child she was holding in her arms. Rider noticed that the woman was scared and the man seemed angry. Rider called 9-1-1 and waited for the police to arrive.

{¶3} The neighbor whose porch the man and woman were standing on was Sherry Cornelius. The screaming on her porch and pounding on the front door awakened her. Cornelius estimated that the screaming and pounding lasted some five minutes, and she heard one of the people cry in a muffle voice, "Help me." Cornelius also made a 9-1-1 call.

{¶4} Elishalin Robinson and Howell lived on Nicholas Place, along with Robinson's three children, two of which she shared with Howell. Robinson testified that she did not remember Howell punching her, and that she simply woke up from her sleep bleeding. She testified that she could not understand why she was bleeding, and had a panic attack. Howell was trying to calm her down, but she "spazzed out" and ran out of the house and down the street. Robinson admitted that she might have told the police and paramedics that Howell had punched her in the face, causing her facial injuries. Finally,

Robinson admitted that she continued to maintain contact with Howell since his arrest via letters and phone calls from jail. Robinson admitted that Howell told her in these letters and phone calls that she should blame her condition that night on her medication. She also claimed to have no memory of banging on neighbors' doors and yelling for their help, or of making a 9-1-1 call with her cell phone.

{¶5} Canton Police Officer Eric Lee responded to the several 9-1-1 calls to the Nicholas Place location and found Robinson. The calls alerted him to the fact that a black female had been running down the street with a black male chasing her, and that the female had a young child with her and was bleeding about her face. Robinson fit this description of the frightened and injured woman. Lee asked her what had happened to her, and Robinson told him that she had been asleep on the sofa when Howell jumped on top of her and started punching her in the face for no reason. Lee was unable to locate Howell at this time.

{¶6} James Dull, a Canton fire fighter and paramedic, also responded to the 9-1-1 calls. He found Robinson to be emotionally distraught and with obvious facial injuries that had caused bleeding about the face. Dull determined that Robinson was not intoxicated or under the influence, and was oriented as to person, place, and time. Dull also checked Robinson's motor sensory impulses, which may reveal possible head injuries, and determined that her impulses were fine. Dull asked Robinson as well what had happened to her for purposes of treating her. Robinson told him that she had been asleep on the couch when Howell began punching her in her face for no reason. Robinson felt a pop in her nose while being punched, and started bleeding. After stabilizing Robinson, Dull transported her to Aultman Hospital for treatment.

{¶7} Robinson admitted that she had recently been angry with Howell because of an affair he was involved in with another woman. She admitted to having several mental issues, including PTSD, ADHD, and being a manic-depressive. In addition to being on four different medications, she was also consuming alcohol on the night of the incident. Robinson testified that she had recently begun taking Paxil, and one of the side effects she was experiencing was unexplained bleeding.

{¶8} After being found guilty of this offense, the trial court sentenced Howell to a prison term of 36 months, and imposed this sentence consecutively with his sentence in a separate criminal case.

*Assignments of Error*

{¶9} Howell raises two assignments of error,

{¶10} "I. THE APPELLANT'S CONVICTION FOR ONE COUNT OF DOMESTIC VIOLENCE IN VIOLATION OF R.C. 2919.25 WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶11} "II. THE APPELLANT'S SENTENCE WAS CONTRARY TO LAW."

I.

{¶12} In his first assignment of error, Taylor challenges the sufficiency of the evidence; he further contends his conviction is against the manifest weight of the evidence produced by the state at trial.

{¶13} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶14} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶15} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶16} To find Howell guilty of domestic violence the trier of fact would have to find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes "A spouse, a person living as a spouse, or a former spouse of the offender" R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" includes "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the

offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). R.C. 2901.22 Culpable mental states, provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶17} Howell does not dispute that at all relevant times Robinson was a family or household member, or a person living as a spouse.

{¶18} Specifically, Howell contends that the state was unable to meet their burden of showing that he caused or attempted to cause physical harm to Robinson. Howell argues Robinson testified that he was not striking her, but was instead trying to calm her down and help clean her up. During her testimony, Robinson stated that she believed that she sustained the injuries because of a sleepwalking incident, in conjunction with various medications she was taking that were causing her to easily bruise. Further, Howell contends Robinson testified that she never saw him strike her, and that upon her waking up he was calming her down and trying to help her.

**{¶19}** In the case at bar, the neighbors testified that a scared and frightened woman awakened them. One neighbor also noticed an angry man pulling at her. Both of these neighbors were concerned enough to call 9-1-1.

**{¶20}** In the case at bar, the jury heard the 9-1-1 call that Robinson made as she was running down the street. (T. at 164). Robinson admitted that she was banging on doors and yelling for help. (T. at 165). Robinson further admitted that she had told both the police and the personnel at the hospital that Howell had punched her in the face. (T. at 167; 170). Robinson was treated for contusions to the face. (T. at 168). The jury was shown photographs of the bloody couch inside the home. (T. at 170).

**{¶21}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Howell committed the crime of domestic violence. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support Howell's conviction.

**{¶22}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the

evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

{¶23} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999).

{¶24} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80,

62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶25}  The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶26}  We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Wolfe of the charges.

{¶27}  Based upon the foregoing and the entire record in this matter, we find Howell's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the

credibility of the testimony of the state's witnesses and Howell. This court will not disturb the trier of facts finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Howell's guilt.

{¶28} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of domestic violence beyond a reasonable doubt.

{¶29} Howell's first assignment of error is overruled.

II.

{¶30} In his second assignment of error, Howell argues that the trial court abused its discretion in imposing the maximum prison.[1]

{¶31} The two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. *State v. Tammerine*, 6th Dist. Lucas No. L–13–1081, 2014–Ohio–425, ¶10. We now review felony sentences using the standard of review set forth in R.C. 2953.08. Id. at ¶11. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. Id. *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

{¶32} Recently, in *State v. Bonnell*, the Supreme Court of Ohio stated that:

---

[1] Howell does not specifically challenge the trial court's imposition of consecutive sentences.

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. (Emphasis added.)

{¶33} Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell,* ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Bonnell,* ¶ 34. The findings required by R.C. 2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry. Id. at the syllabus. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court. *Bonnell*, ¶ 30.

{¶34} We find the Supreme Court's analysis in *Bonnell* to be instructive when analyzing whether a maximum sentence imposed by a trial court is contrary to law.

{¶35} R.C. 2929.12 lists general factors that must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine

the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶36}** Under R.C. 2929.11(A), the "overriding purposes" of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. R.C. 2929.11(A).

**{¶37}** Among the various factors that the trial court must consider and balance under R.C. 2929.12 are: (1) serious physical, psychological, or economic harm to the victim as a result of the offense; (2) whether the offender has a history of criminal convictions; (3) whether the offender has not responded favorably to sanctions previously imposed by criminal convictions; and (4) whether the offender shows genuine remorse for the offense. R.C. 2929.12.

**{¶38}** R.C. 2929.11 and 2929.12 require consideration of the purposes of felony sentencing, as well as the factors of seriousness and recidivism. *See State v. Mathis*, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006–Ohio–855, ¶ 38.

**{¶39}** In the case at bar, the trial court noted that Howell was on community control sanctions at the time he committed the offense in this case. (3T. at 319-320). R.C. 2929.12(D)(1). The jury found that Howell had two prior domestic violence convictions. (3T. at 314). R.C. 2929.12(D)(2). The trial court considered the victim

impact statement. (3T. at 318). The trial court also considered the violence used in committing the offense.

**{¶40}** Upon review, we find that the trial court's sentencing on the charge complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code and advised Howell regarding post release control. Therefore, the sentence is not clearly and convincingly contrary to law.

**{¶41}** Both on the record during the sentencing hearing and in the sentencing entry filed December 12, 2014 the trial court noted specifically that it had considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12.

**{¶42}** In the case at bar, the trial court stated "consecutive sentences are necessary to protect the public from future crime, that consecutive sentences are necessary to punish the defendant, and that they are not disproportionate to the seriousness of the conduct and the danger that the defendant possesses [sic.]" (3T at 319). The record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**{¶43}** For the foregoing reasons, we find no error in the sentence imposed by the trial court. Accordingly, Howell's second assignment of error is overruled.

{¶44}  The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur