[Cite as *State v. Fulford*, 2021-Ohio-356.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

DAVRION K. FULFORD, JR.

     Defendant-Appellant

JUDGES:
Hon. Craig R. Baldwin, P. J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. CT2020-0021

O P I N I O N

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. CR2019-0675

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 9, 2021

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
PROSECUTING ATTORNEY
TAYLOR P. BENNINGTON
ASSISTANT PROSECUTOR
27 North Fifth Street, P.O. Box 189
Zanesville, Ohio 43702-0189

For Defendant-Appellant

JAMES ANZELMO
ANZELMO LAW
446 Howland Drive
Gahanna, Ohio 43230

*Wise, J.*

**{¶1}** Defendant-Appellant Davrion K. Fulford, Jr. appeals his conviction and sentence entered in the Muskingum County Court of Common Pleas on four counts of discharging a firearm at or into a habitation, following a guilty plea.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

Incident #1

**{¶4}** On December 10, 2018, at 2:30 a.m., law enforcement received a call that there were shots fired at 728 Indiana Street, which is a known drug house in Zanesville. Officers were advised that there were four (4) gunshots at the house. Upon their arrival, officers located four (4) empty shell casings in the middle of Indiana Street. One of the rounds went into the front door at 722 Indiana Street, which was occupied by victim Rich Archer. Three of the rounds when into 728 Indiana Street, which was occupied by Jennifer Brozi, Felicia Mercer, Carolyn Faye, Chris Cooper, and Brett Alexander.

**{¶5}** Individuals were interviewed from each of these addresses and a description of a small SUV was obtained. Surveillance video was collected which showed a small SUV turning off of Pine Street, heading southbound onto Indiana Street at the time of the shooting.

**{¶6}** Later, another shooting occurred on Race Street, also in Zanesville, which involved a vehicle matching the same small SUV description.

Incident #2:

**{¶7}** On January 3, 2019, law enforcement received a call regarding shots fired in the area of Race Street in Zanesville. Officers arrived on scene and located shell casings and glass in the roadway.

**{¶8}** An hour later, officers received a call from Shane Donovan, who stated his brother's car had been shot. Shane's brother is Justin Donovan. Officers then responded to that scene. After a thorough investigation, it was found that Appellant and another individual had shot up Justin Donovan's vehicle on Race Street over the issue of obtaining drugs. Justin was inside the vehicle as it was being shot.

Incident #3:

**{¶9}** On January 19, 2019, around 6:00 a.m., the Morgan County Sheriff's Office received a call in reference to a home invasion in Morgan County. The caller advised that she was tied up and held against her will by three (3) males. At least two (2) shots were fired during the incident. The caller also stated that the men had taken a hostage from the residence. The hostage was identified as Tammy Jenkins. The three men were identified as Dashawn Kepler, Jamal Mayle, and Appellant.

**{¶10}** Later that afternoon, officers with the Zanesville Police Department located Tammy Jenkins at a residence off of Spangler Avenue in Zanesville. Jenkins told the police that Appellant had taken her against her will and had taken her to a hotel in the downtown Zanesville area. Officers searched hotel parking lots and located a vehicle matching the description given. The vehicle came back as belonging to Erin Evans, who is known to be Appellant's girlfriend. Evans had rented Room 201 at the hotel.

{¶11} As officers were surveilling the room, Evans exited the room and was taken into custody. She gave permission for officers to enter the hotel room. As the SRT team was assembling, Appellant was found walking the hallway of the hotel and was taken into custody. Kepler was also located inside the hotel room and was detained for Morgan County. While he was being taken into custody, two (2) .22 caliber bullets were found lying on the floor next to the couch on which he had been sleeping. Also on that couch with Kepler was Evans' six (6) month old daughter. Kepler advised the police that he had marijuana on his person.

{¶12} Items found inside the room included a fanny pack with $2,311.00 inside, a lockbox that smelled like marijuana, .22 caliber bullets, and a purse containing 20.91 grams of heroin, 6.21 grams of cocaine, and $414.96. A set of keys was also located that opened a safe. Inside the safe was a large amount of marijuana and three (3) handguns.

{¶13} Appellant Davrion Fulford, Jr. and Dashawn Kepler were arrested. The vehicle they were driving at the time of their arrest was a Honda CR-V, a small SUV. A comparison of this vehicle to the vehicle in the surveillance video from the 728 Indiana shooting appeared to be a match. A .22 caliber handgun was also recovered.

{¶14} Kepler was interviewed and advised that he, Appellant, and a third male he did not know went to Morgan County to rob people. Kepler stated he drove to a house in Morgan County, and Appellant and the third male exited the vehicle and robbed a residence. Kepler stated he was just the getaway driver. He stated they then robbed a total of three (3) houses in Morgan County. At the last house, they picked up Tammy Jenkins. He said that Jenkins told the men about a place in The Plains in Athens County that they could rob. It was at this time that they drove to The Plains, and all the individuals

robbed that house for a large bag of marijuana. They then drove back to Zanesville, where they dropped Jenkins off at a residence.

{¶15} Kepler was also interviewed regarding the 728 Indiana Street shooting. He indicated that he was not involved in that shooting, but that immediately after the shooting, Appellant showed up in a red Honda CR-V and told Kepler that he had just shot up a place on Indiana Street. Appellant told Kepler that it was his turf and nobody was going to be trapping on his turf.

{¶16} Appellant was also interviewed. During his interview he stated that he had been with Kepler during the Morgan County incident. He claimed he did not rob or kidnap anyone, but that Jenkins had advised them about a house in The Plains. Appellant stated they drove to The Plains and robbed the people, taking marijuana and two guns from the house. Appellant then indicated that he had a gun on him while in Morgan County and at The Plains. He also stated the heroin found inside the purse at the hotel room was his.

{¶17} Appellant was then asked about the shooting on Race Street. He advised he was also involved in that shooting. Appellant also admitted to being involved in the shooting at 728 Indiana Street. Appellant stated Kepler was driving the vehicle at the time of the shooting. He stated it involved four (4) shots being fired over the roadway from the vehicle, and that the shots were fired into houses. Appellant stated he was the shooter in this incident, and that he shot Brett Alexander's house because the male living there had previously shot at him.

{¶18} On November 14, 2019, Appellant was indicted on: Four (4) counts of Discharging a firearm at/into a habitation, with drive-by specifications, and with firearm specifications, felonies of the second degree, in violation of R.C. §2923.16(A)(1) (Counts

1-4);  five (5) counts of Discharging a firearm over a roadway with drive-by specifications, and with firearm specifications, felonies of the third degree, in violation of R.C. §2923.162(A)(3) (Counts 5-8, 11); two (2) counts of Having a weapon while under disability, felonies of the third degree, in violation of R.C. §2923.13(A)(3) (Counts 9-10); two (2) counts of Having a weapon while under disability, with forfeiture specifications, felonies of the third degree, in violation of R.C. §2923.13(A)(3) (Counts 12-13); one count of Possession of drugs (marijuana), with a firearm specification, with a forfeiture specification a felony of the fifth degree, in violation of R.C. §2925.11(A) (Count 14); and one count of Possession of drugs (heroin), with a firearm specification and with a forfeiture specification a felony of the second degree, in violation of R.C. §2925.11(A) (Count 15).

{¶19} On February 24, 2020, Appellant pled guilty to the following:

Counts 1-4:  Discharging a firearm at/into a habitation, with drive-by specifications, and with firearm specifications, felonies of the second degree, in violation of R.C. §2923.161(A)(1)

Counts 5-8: Discharging a firearm over a roadway with drive-by specifications, and with firearm specifications, felonies of the third degree, in violation of R.C. 2923.162(A)(3)

Count 9: Having a weapon while under disability, a felony of the third degree, in violation of R.C. §2923.13(A)(3)

Count 11: Discharging a firearm over a roadway with a firearm specification, AS AMENDED, a felony of the third degree, in violation of R.C. §2923.162(A)(3)

Count 12: Having a weapon while under disability, with a forfeiture specification, a felony of the third degree, in violation of R.C. §2923.13(A)(3)

Count 15: Possession of drugs (heroin), with a firearm specification and with a forfeiture specification a felony of the second degree, in violation of R.C. §2925.11(A)

**{¶20}** Appellant then waived a presentence investigation and a sentencing hearing was held. The parties stipulated that Counts 1-8 would merge for the purposes of sentencing. The State elected to sentence under Count 1. The parties further stipulated that the specifications for Counts 1-8 would also merge, resulting in a single specification. The State elected the five (5) year drive-by specification.

**{¶21}** Appellant then received the following sentence:

**{¶22}** • Count 1: six (6) years

**{¶23}** • Specification: five (5) years

**{¶24}** • Count 9: twenty-four (24) months

**{¶25}** • Count 11: twelve (12) months

**{¶26}** • Specification: three (3) years, mandatory consecutive

**{¶27}** • Count 12: twenty-four (24) months

**{¶28}** • Count 15: five (5) years

**{¶29}** The trial court found the periods of incarceration imposed for Counts 9 and 12 would be served concurrently with all other counts; and the period of incarceration imposed for Counts 1, 11, and 15 would be served consecutively with each other, for an aggregate sentence of twenty (20) years in prison, with thirteen (13) years being a period of mandatory incarceration.

**{¶30}** Appellant now appeals, raising the following assignments of error for review:

**ASSIGNMENTS OF ERROR**

**{¶31}** "I. THE TRIAL COURT PLAINLY ERRED BY FAILING TO MERGE ALL OF FULFORD'S OFFENSES.

**{¶32}** "II. FULFORD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶33}** "III. THE TRIAL COURT UNLAWFULLY ORDERED FULFORD TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**I.**

**{¶34}** In his first assignment of error, Appellant argues the trial court erred by failing to merge all of Appellant's offenses. We disagree.

**{¶35}** A review of the record reflects that Appellant and the state of Ohio entered into a negotiated plea agreement in this case. At sentencing, the parties stipulated that counts one through eight merged for purposes of sentencing. (T. at 6). The state elected count one for sentencing. *Id*. The parties also stipulated that the specifications for counts one through eight would also merge with each other, resulting in just one specification. The state elected the five (5) year drive-by specification for sentencing. *Id.*  The state agreed to dismiss counts ten, thirteen, and fourteen, and the drive-by specification only as contained in count eleven. The parties further stipulated, on the record, that with the exception of counts one through eight, the specifications and the remaining counts do not

merge. (T. at 7). During the plea colloquy, the trial court specifically asked Appellant if he understood that when there are multiple offenses that do not merge, the court could order the sentences be served consecutively, to which Appellant stated that he did understand. (T. at 11).

**{¶36}** By failing to seek the merger of these convictions as allied offenses of similar import in the trial court, Appellant forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. To prevail on a claim of plain error, Appellant must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Id.*

**{¶37}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court set forth the test to determine if two offenses are allied offenses of similar import:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
>
> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2)

Were they committed separately? and, (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

**{¶38}** *Id.* at ¶ 30–31.

**{¶39}** Appellant herein asserts that he committed all of the offenses with the same animus and under a common scheme of activity. Upon review, we find said argument to be unpersuasive.

**{¶40}** Appellant herein was sentenced on Counts 1, 9, 11, 12 and 15. Appellant committed Count 9 (having weapons while under disability) on December 10, 2018, when he knowingly carried a firearm that day. He then separately committed Count 1 (discharging a firearm at/into a habitation) when he decided to travel to 722 Indiana Street on December 10, 2018, and fire a weapon into the residence located at that address. We find these offenses were committed with a separate animus and motivation and caused separate, identifiable harms. We therefore find Counts 1 and 9 do not merge.

**{¶41}** Count 11 (discharging a firearm over a roadway) was committed on January 3, 2019, when Appellant fired a weapon into Justin Donovan's vehicle while Mr. Donovan was in said vehicle. This offense occurred on a separate day, at a different location, and with a different motivation than Counts 1 and 9, and therefore does not merge with those offenses.

**{¶42}** Count 12 (having weapons while under disability) was committed on January 19, 2019, when he knowingly carried a firearm on that day. Count 15 (possession of drugs (heroin)) was committed separately on January 19, 2019, when he possessed

heroin in the hotel room. These offenses were committed separately, caused separate, identifiable harms and were committed with a separate animus or motivation. We therefore find that these offenses do not merge with each other or with Counts 1, 9, or 11.

**{¶43}** Appellant's first assignment of error is overruled.

**II.**

**{¶44}** In his second assignment of error, Appellant argues he was denied the effective assistance of counsel. We disagree.

**{¶45}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶46}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶47}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), *citing Strickland,* 466 U.S. at 697. We note that a properly licensed attorney is presumed competent. *See Vaughn v. Maxwell,* 2 Ohio St.2d 299, 209 N.E.2d 164 (1965); *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

**{¶48}** Further, reviewing courts must refrain from second-guessing strategic decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. *State v. Merry*, 5th Dist. Stark No. 2011CA00203, 2012-Ohio-2910, ¶ 42, citing *State v. Carter,* 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Wilson*, 2018-Ohio-396, 106 N.E.3d 806, ¶ 36 (5th Dist.), citing *State v. Hoffner*, 102 Ohio St.3d 358, 365, 2004-Ohio-3430, 811 N.E.2d 48 (2004), ¶ 45.

**{¶49}** In the instant case, having found no error in the trial court's decision to not merge all of Appellant's offenses, we find no ineffective assistance in trial counsel's failure to object to same.

**{¶50}** Appellant's second assignment of error is overruled.

III.

**{¶51}** In his third assignment of error, Appellant argues the trial court erred in imposing consecutive sentences. We disagree.

**{¶52}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31

**{¶53}** In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. §2929.11 and R.C. §2929.12, while R.C. §2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. 158 Ohio St.3d 279, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

**{¶54}** R.C. §2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. §2929.13(B) or (D), §2929.14(B)(2)(e) or (C)(4), or §2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

**{¶55}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**{¶56}** As the Ohio Supreme Court noted in *Gwynne*,

Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C.

2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences. *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").

> While R.C. §2953.08(G)(2)(a) clearly applies to consecutive-sentencing review, R.C. §2929.11 and §2929.12 both clearly apply only to *individual* sentences. 2019-Ohio-4761, ¶¶16-17(emphasis in original).

**{¶57}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See Id*. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id*.

**{¶58}** Appellant herein concedes that the trial judge in his case made the requisite findings to impose consecutive sentences under R.C. §2929.14(C)(4). Appellant argues only that the imposition of consecutive sentences was not supported by the record.

**{¶59}** According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. at ¶29.

**{¶60}** In the case at bar, the trial court considered the number of offenses committed by Appellant and the serious nature of the offenses, finding "[a]s evidenced by the stuff I just stated; by going around and up and down streets firing guns at houses. It's pretty serious." (T. at 37). The trial court also had before it Appellant's criminal history and at least one letter from one of the victims. The court commented on the victim's letter, stating that Appellant may not realize the effect his actions have on his victims and that anytime he picks up a gun and shoots it, it is possible that harm could come to someone. (T. at 35).

**{¶61}**  Upon review, as set forth above, we find the record supports the trial court findings as required in order to impose consecutive sentences. We find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Further, the record contains evidence supporting the trial court's findings under R.C. §2929.14(C)(4). Therefore, we have no basis for concluding that it is contrary to law.

**{¶62}** Appellant's third assignment of error is overruled.

**{¶63}** Accordingly, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.

By: Wise, J.

Baldwin, P. J., and

Hoffman, J., concur.

JWW/kw 0205