**[Cite as *State v. Highley*, 2023-Ohio-3569.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JOSHUA D. HIGHLEY | : | Case No. 2023CA00026 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 2022CR00548


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        October 2, 2023


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

KENNETH W. OSWALT        RICHARD D. HIXSON
20 South Second Street        3808 James Court
Fourth Floor        Suite 2
Newark, OH  43055        Zanesville, OH  43701

*King, J.*

{¶ 1}   Defendant-Appellant, Joshua D. Highley, appeals his March 22, 2023 consecutive sentence by the Court of Common Pleas of Licking County, Ohio.  He also challenges the trial court's denial of his motion to suppress.  Plaintiff-Appellee is the state of Ohio.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On September 1, 2022, the Licking County Grand Jury indicted Highley on one count of aggravated possession of methamphetamine in violation of R.C. 2925.11, one count of aggravated trafficking in methamphetamine in violation of R.C. 2925.03, and one count of having weapons while under disability in violation of R.C. 2923.13.  The charges arose from a motor vehicle stop for fictious license plates and suspended driver's license.

{¶ 3}   On October 13, 2022, Highley filed a motion to suppress, claiming an illegal expanded search of his vehicle.  A hearing was held on November 23, 2022.  By judgment entries filed November 23, 2022 and January 31, 2023, the trial court denied the motion.

{¶ 4}   On March 22, 2023, Highley pled no contest to the charges.  By judgment entry filed March 22, 2023, the trial court found appellant guilty, and sentenced him to an aggregate term of five to six years in prison; minimum two years and maximum three years on the trafficking count and three years on the weapons count, to be served consecutively.

{¶ 5}   Highley filed an appeal with the following assignments of error:

I

{¶ 6}  "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

II

{¶ 7}  "THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO LAW AND UNSUPPORTED BY THE RECORD."

III

{¶ 8}  "THE TRIAL COURT COURT ERRED WHEN IT SENTENCED DEFENDANT/APPELLANT TO A MINIMUM SENTENCE OF TWO YEARS AND A MAXIMUM SENTENCE OF THREE YEARS ON COUNT TWO, AS THE PRESUMPTIVE RELEASE PROVISIONS OF R.C. 2967.271 ARE UNCONSTITUTIONAL."

I

{¶ 9}  In his first assignment of error, Highley claims the trial court erred in denying his motion to suppress.  We disagree.

{¶ 10} As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported

by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 11} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 94 (1996):

We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal.  Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

{¶ 12} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).  "Where a police

officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]"  *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996).  Officers may search the vehicle without a warrant under the automobile exception, which:

> "allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate a search or seizure."  *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992), citing *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).  A vehicle's mobility is the traditional exigency for the automobile exception to the warrant requirement.  *Id.*, citing *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).  Therefore, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more."  *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), citing *Carney* at 393.

> Additionally, "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement.  There need not be other tangible evidence to justify a warrantless search of the vehicle."  *Id.* [*Chambers v. Maroney*] at 48.  See

also *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255 (reaffirming that the smell of [burnt] marijuana in the passenger compartment of a vehicle establishes probable cause for a warrantless search of the passenger compartment, but not of the trunk). " 'When there is probable cause to search for contraband in a car, it is reasonable for police officers * * * to examine packages and containers without a showing of individualized probable cause for each one.' " *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002 116 N.E.3d 1262 ¶ 14[,] quoting *Wyoming v. Houghton*, 526 U.S. 295, 302,119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).

*State v. Graves,* 5th Dist. Ashland No. 22COA001, 2022-Ohio-4130, ¶ 43-44.

{¶ 13} In *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court of the United States held: "the scope of the warrantless search authorized by that [automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

{¶ 14} In his motion to suppress, Highley did not contest probable cause to stop him; he argued the officers did not have probable cause to expand their search and open containers in his vehicle.

{¶ 15} Detective Kyle Boerstler with the Licking County Sheriff's Office and assigned to the Central Ohio Drug Enforcement Task Force, testified he received

information from a confidential source that Highley was in possession of a large amount of methamphetamine and was at the home of a known drug dealer; the detective was informed of the vehicle Highley would be driving.  November 23, 2022 T. at 10.  Detective Boerstler and others went to the residence.  *Id.*  The detective located the vehicle in the area and ran the license plates and Highley's driver's license; the plates were fictitious and his driver's license was suspended.  *Id.*  Detective Boerstler observed Highley exit the residence, enter the vehicle, and drive away.  T. at 12.  A marked cruiser stopped Highley.  T. at 13.  Detective Boerstler, who was following in an unmarked vehicle, observed Highley's right arm "so far under the driver's seat" that he was either "stuffing a gun or something under the seat at that time."  T. at 12-13.

{¶ 16} Detective Boerstler was trained in detecting the odor of raw and burnt marijuana.  T. at 8-9.  Upon approaching Highley's vehicle, he detected an immediate distinct strong odor of marijuana.  T. at 14.  Highley denied the vehicle was his and claimed he knew nothing about what was inside the vehicle.  T. at 23.  Highley was removed from the vehicle and a loaded firearm was found under the driver's seat.  T. at 17; State's Exhibits 1C and 1D.  A panda backpack was located on the floorboard of the front passenger compartment containing methamphetamine.  T. at 18-19; State's Exhibits 1G and 1H.  A lockbox was located in the trunk which also contained methamphetamine.[1] T. at 19-20; State's Exhibits 1I and 1J.  The detective did not have a search warrant.  T. at 29-30.  He explained had nothing been found in the vehicle, it still would have been

---

[1]No testimony was given as to whether the lockbox was unlocked or locked during the suppression hearing.  The state recited the facts at the change of plea hearing which were agreed to by both parties; the state mentioned the lockbox was unlocked. Appellant's Brief at 5; March 22, 2023 T. at 10.

impounded and towed because of the fictitious plates and the driver's suspended license, and because the vehicle was parked on business property. T. at 21-22. An inventory search would have been conducted pursuant to police department policy to safeguard any property in the vehicle and the drugs and weapon would have been found. T. at 22-23, 33; State's Exhibit 3.

{¶ 17} Detective Hayden Walpole also with the Licking County Sheriff's Office and assigned to the Central Ohio Drug Enforcement Task Force, testified he was in a marked cruiser and pulled Highley over after receiving a radio call from Detective Boerstler on the fictitious plates and suspended driver's license. T. at 35-36. Highley stopped his vehicle in a car wash bay of a business. T. at 36. Detective Walpole removed Highley from his vehicle. T. at 37-38. Highley told him he had some "roaches" in the vehicle, but the vehicle belonged to his buddy; any contents in the vehicle belonged to someone else. T. at 38.

{¶ 18} Detective Todd Green with the Newark Police Department and assigned to the Central Ohio Drug Enforcement Task Force, testified he had observed Highley driving the subject vehicle "numerous times." T. at 45. He was also trained in detecting the odor of raw and burnt marijuana. T. at 44. When he approached Highley's vehicle, he detected a strong odor of raw marijuana. T. at 46. Detective Green read Highley his *Miranda* rights. *Id.* A tow truck was called because the vehicle was parked in a business car wash bay, it had fictitious plates, Highley did not have a valid driver's license, and he was under arrest; "[s]o the tow truck's called for three or four different reasons." T. at 48.

{¶ 19} In its January 31, 2023 judgment entry denying the motion to suppress, the trial court found:

the State possessed sufficient reasonable suspicion to stop the defendant on the basis of the fictitious plates on the vehicle and his own lack of a driver's license. On the basis of the smell of raw marijuana, the State further possesses the ability to search the entire vehicle, and pursuant to the City of Newark Police Department's impoundment policy to search the entire vehicle and every locked container in it.

{¶ 20} We agree. Here, detectives received a confidential tip that Highley was in possession of a large amount of methamphetamine and was at the home of a known drug dealer; they were told what vehicle Highley would be driving. Prior to stopping his vehicle, Highley made furtive movements under his driver's seat. Upon conducting an uncontested valid stop of the vehicle, the detectives detected a strong odor of raw marijuana. Highly admitted to having "roaches" in the vehicle. The marijuana odor and admissions gave the detectives probable cause to search for contraband in the vehicle, including the panda backpack. The detectives found methamphetamine in the backpack and a loaded weapon under the driver's seat; they had probable cause to search the entire vehicle for additional contraband. In addition, the contraband would have been discovered because the vehicle was subject to an inventory search for towing purposes.

{¶ 21} Because there is ample evidence to support the detectives' actions, we decline to review the state's argument relative to Highley's lack of standing to challenge the expanded search.

{¶ 22} Upon review, we find the trial court did not err in denying Highley's motion to suppress.

{¶ 23} Assignment of Error I is denied.

II

{¶ 24} In his second assignment of error, Highley claims the trial court erred in sentencing him to consecutive sentences. We disagree.

{¶ 25} This court reviews felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. Subsection (G)(2) sets forth this court's standard of review as follows:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of

section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 26} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 27} R.C. 2929.14(C)(4) governs consecutive sentences and states the following:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} R.C. 2953.08(G)(2) requires this court to review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings. *State v. Gwynne*, --- Ohio St.3d ---, 2022-Ohio-4607, --- N.E.3d ---, ¶ 1. When imposing consecutive sentences, a trial court must state the required findings at the sentencing hearing. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. Because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry. *Id.* While a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, "it has no obligation to state reasons to support its findings." *Id.* at ¶ 37. As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 29.

{¶ 29} Our review is a two-step process. The first step is whether the trial court made the requisite findings under R.C. 2929.14(C)(4); the second step is whether the trial court's decision to impose consecutive sentences is not clearly and convincingly supported by the record. *Gwynne* at ¶ 25-26. We are required "to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* at ¶ 29.

{¶ 30} In his appellate brief at 10, Highley admits that the trial court recited the requisite statutory findings on the record regarding consecutive sentences and the sentences are within the statutory range; he argues the record does not support the trial court's imposition of consecutive sentences. He points out he did not have any violations while on pretrial release, "was becoming a productive member of society by obtaining employment," and despite his criminal history, had never been to prison.

{¶ 31} During the sentencing hearing, the trial court stated it was imposing consecutive sentences because "consecutive sentences are necessary to protect the public, not disproportionate to the seriousness of your conduct or the danger you pose to the public, and that your criminal history necessitates consecutive sentences." March 22, 2023 T. at 20. The trial court journalized this finding in its judgment entry on sentencing filed March 22, 2023.

{¶ 32} The record demonstrates the trial court received and reviewed a presentence investigation report, and heard statements from the prosecutor and defense counsel. The presentence investigation report revealed Highley's criminal history which included twenty-six misdemeanor and felony convictions spanning twelve years, from 2010 to 2022. While most of the offenses were traffic violations and driving under

suspension, he had several convictions for driving under the influence of alcohol and/or drugs, and convictions for possession of drug paraphernalia, possession of drug instruments, aggravated possession of drugs, and trafficking in drugs. Highley received treatment in lieu of prison time. The trial court noted Highley "had enough treatment in the past for you to realize what was going on and to know what you needed to do. You chose just to do something else." March 22, 2023 T. at 20. When Highley was stopped by the detectives, his vehicle contained methamphetamine, marijuana, a digital scale, drug paraphernalia, and a semiautomatic handgun. *Id.* at 10. While Highley may have never done prison time, he has now upgraded to second degree felony drug convictions and added a loaded weapon to the mix.

{¶ 33} After reviewing the entire record de novo and weighing the quality and quantity of the evidence, we do not clearly and convincingly find that the evidence in the record did not support the consecutive-sentence findings. In fact, there was ample evidentiary support for the trial court to find that consecutive service was necessary to protect the public from future crime or to punish Highley, consecutive sentences were not disproportionate to the seriousness of Highley's conduct and to the danger he posed to the public, and consecutive sentences were necessary to protect the public from future crimes.

{¶ 34} Upon review, we find the trial court's imposition of consecutive sentences is not contrary to law.

{¶ 35} Assignment of Error II is denied.

III

{¶ 36} In his third assignment of error, Highley claims his indefinite sentence under the Reagan Tokes Act, codified in R.C. 2967.271, is unconstitutional because the presumptive release provisions of the statute violate the doctrine of separation of powers, his right to a jury trial, and due process principals under the federal and state constitutions. We disagree.

{¶ 37} We rejected the same challenges in *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, ¶ 6:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates

equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶ 38} The Supreme Court of Ohio recently upheld the constitutionality of the Reagan Tokes Law, finding it is not violative of the separation of powers doctrine, a defendant's right to a jury trial, and a defendant's procedural due process rights, and is not void for vagueness. *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, ¶ 25, 28, 40, 41.

{¶ 39} Assignment of Error III is denied.

{¶ 40} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By King, J.

Gwin, P.J. and

Delaney, J. concur.